UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 25 2025

KEVIN P WEIMER, Clerk
By: Matthew H  Deputy Clerk

UMAR CLARK,

Plaintiff,

v.

AMERICAN EXPRESS NATIONAL BANK,

Defendant.

Case No

1:25-CV-5501

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Umar Clark, proceeding *pro se*, files this Complaint against Defendant American Express National Bank and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

2. Venue is proper in this District pursuant to 15 U.S.C. § 1681p because Plaintiff resides in this District, the alleged violations occurred in this District, and Defendant transacts business in this District.

### II. PARTIES

1

3. Plaintiff Umar Clark is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c). Plaintiff resides at 1441 Woodmont Ln #310, Atlanta, GA 30318.

4. Defendant American Express National Bank is a national banking association with its principal place of business at 200 Vesey Street, New York, NY 10285. Defendant is a "furnisher" of information to consumer reporting agencies as defined by 15 U.S.C. § 1681s-2 and regularly transacts business in this District.

### III. STATEMENT OF FACTS

5. Plaintiff maintained a business credit card account with Defendant, specifically an American Express Business Gold Card (the "Account").

6. Plaintiff regularly used the Account for business purposes, including travel, expenses, and payroll, and paid balances off within 30 days.

7. In October 2024, while traveling abroad for business, Plaintiff attempted to use the Account to pay for hotel rooms for himself and important business clients. The charge was declined.

8. Plaintiff requested that the hotel employee attempt the charge again, as occasional declines occurred if Plaintiff did not notify Defendant of international travel in advance. The charge was declined a second time.

9. This decline caused Plaintiff significant embarrassment in front of important business clients, whom Plaintiff had promised to cover. Plaintiff was forced to use an alternative credit card to complete the transaction.

10. Upon returning to his hotel room, Plaintiff contacted Defendant by telephone. Defendant informed Plaintiff that it was shutting down the Account unless Plaintiff provided tax returns or bank statements.

11. Plaintiff provided bank statements to Defendant, demonstrating that Plaintiff's business generated over $100,000 in monthly revenue.

12. Despite this documentation, Defendant informed Plaintiff that it was shutting down the Account for internal reasons, without providing a specific explanation.

13. On or about January 5, 2025, Plaintiff applied for a $15,000 business loan for marketing purposes. Plaintiff received a notification that the application was declined due to information in his Experian credit report.

14. Plaintiff reviewed his Experian credit report and discovered that Defendant had reported inaccurate information regarding the Account, including: a. Date of first delinquency: May 2024. This is inaccurate because the Account was current and actively used by Plaintiff without issue through October 2024, and Plaintiff received no notice of delinquency prior to October 2024. b. Date of last payment: April 2024. This is accurate but inconsistent with the reported delinquency and charge-off dates, suggesting improper reporting. c. Balance: $15,843. This is inaccurate because it does not reflect the true amount associated with the Account at the time of its closure in October 2024. d. Charge-off date: June 2024. This is inaccurate because the Account remained open and usable by Plaintiff until October 2024, when Defendant closed it, which would not have been possible if charged off in June 2024.

15. On January 6, 2025, Plaintiff disputed the inaccurate information with Experian via certified mail (tracking number 9214890142980411963650).

3

16. On February 12, 2025, Experian responded, stating that the information had been verified and no changes were made.

17. Upon information and belief, Experian notified Defendant of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(2), triggering Defendant's duties under 15 U.S.C. § 1681s-2(b).

18. Plaintiff submitted a complaint to Defendant via the Consumer Financial Protection Bureau ("CFPB"), requesting: (1) the method and procedure used to verify the alleged debt and all data points; (2) a copy of Defendant's internal policies regarding the FCRA; and (3) proof of a proper investigation under the FCRA.

19. Defendant responded with account statements but made no reference to the requested information, indicating an unreasonable or sham investigation.

20. Plaintiff sent Defendant a demand letter via certified mail (tracking number 9214890142980411899119), demanding remediation and warning of federal litigation if not addressed.

21. Defendant responded to the demand letter but failed to correct the inaccurate information.

22. As a direct result of Defendant's inaccurate reporting and failure to correct it, Plaintiff suffered actual damages, including the denial of the $15,000 business loan, which hindered Plaintiff's ability to scale his business, resulting in business and financial losses.

23. Plaintiff also suffered severe emotional distress and anxiety due to the inaccurate reporting and its consequences, for which Plaintiff will provide proof during discovery.

## IV. CAUSES OF ACTION

**Count I: Violation of the FCRA, 15 U.S.C. § 1681s-2(b) (Negligent Noncompliance)**

24. Plaintiff incorporates by reference all preceding paragraphs.

25. Defendant is a furnisher of information under the FCRA. 26. The information Defendant furnished to Experian was inaccurate, as detailed in Paragraph 14.

27. Plaintiff disputed the inaccurate information with Experian, which notified Defendant of the dispute.

28. Defendant failed to conduct a reasonable investigation, as evidenced by its failure to correct the patently inaccurate dates and balance, which are contradicted by the Account's active use until October 2024, and by its inadequate response to the CFPB complaint.

29. Defendant failed to review all relevant information, failed to modify or delete the inaccurate information, and failed to prevent re-reporting of the inaccuracies, in violation of 15 U.S.C. § 1681s-2(b)(1).

30. Defendant's violations were negligent.

31. As a proximate result, Plaintiff suffered actual damages, including financial losses from the denied loan, business losses, emotional distress, and anxiety.

**Count II: Violation of the FCRA, 15 U.S.C. § 1681s-2(b) (Willful Noncompliance)** 32. Plaintiff incorporates by reference all preceding paragraphs.

33. Defendant's violations were willful, as Defendant recklessly disregarded its obligations under the FCRA by conducting a sham investigation, ignoring the obvious inconsistencies in the reported dates based on the Account's history, and failing to provide substantive responses to Plaintiff's requests for verification and policies.

34. Defendant's willful conduct entitles Plaintiff to statutory damages under 15 U.S.C. § 1681n.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that Defendant violated the FCRA;

b. Order Defendant to delete the inaccurate information from Plaintiff's credit reports and prevent its re-reporting; c. Award actual damages in the amount of $25,000; d. Award statutory damages of $1,000 per violation; e. Award costs of this action; f. Award such other and further relief as the Court deems just and proper.

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 20, 2025

Respectfully submitted,
/s/ Umar Clark Umar Clark, *pro se*

1441 Woodmont Ln #310

Atlanta, GA 30318

Email: Umar.clark@yahoo.com